**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-21797-CIV-MOORE**

**JEFF FLEURANVILLE**,

    *Plaintiff*,

*v.*

**MIAMI-DADE COUNTY,** *et al.*,

    *Defendants*.

_____/

**DEFENDANTS' MOTION TO DISMISS THE
<u>AMENDED COMPLAINT WITH PREJUDICE</u>**

On May 11, 2018, R.F. ("Victim"), an elderly, seventy-four-year-old woman accused her son, Plaintiff Jeff Fleuranville, of sexually assaulting her on multiple occasions by locking her in a house, removing her clothes, raping her, and slapping her repeatedly when she refused to perform certain sexual acts on him. *See* Arrest Affidavit [Ex. 1].[1] For these crimes, Plaintiff was arrested and charged with 10 counts of sexual battery, 2 counts of battery on an elderly person, and one

---

[1] The Court may take judicial notice of public records, including arrest affidavits and criminal dockets, and consider those facts in resolving a motion to dismiss. *See Brivik v. Law*, 545 Fed. Appx. 804, 806 (11th Cir. 2013) (affirming district court's grant of motion to dismiss, attaching arrest affidavit); *Walker v. Prieto*, 414 F. Supp. 2d 1148, 1154 n. 1 (S.D. Fla. 2006), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (Moore, J.) (noting that an arrest affidavit is a matter of public record and thus may be considered by the Court at the motion to dismiss stage); *See McDowell Bey v. Vega*, 588 Fed. Appx. 923, 926 (11th Cir. 2014) (affirming a district court's decision to take judicial notice of the docket in a criminal case to dismiss claim).

count of kidnapping. *See* Criminal Docket [Ex. 2]. Over time, however, the Victim's capacity to recollect the incident severely declined due to degenerative aging conditions, and the State Attorney's Office elected to nolle prose/no action the claims against Plaintiff. *See id.*; *see also* Compl. ¶ 15 (noting the Victim "suffers from dementia and other mental health disorders.").

On May 12, 2023, Plaintiff filed a Complaint for false arrest and malicious prosecution against Miami-Dade County and five police officers. *See* Complaint [ECF No. 5]. The Defendants filed a Motion to Dismiss the Complaint [ECF No. 8] and following the Court's Order granting Plaintiff permission for leave to amend [ECF No. 9], Plaintiff filed an Amended Complaint [ECF No. 10]. The Amended Complaint alleges 20 counts against four Miami-Dade Police Officers Wislyn Joseph, Gregory Cheever, Ernesto Miranda, Lashonya Leonard, and one former Miami-Dade Police Officer, Darlene Cordero (collectively, "Officers"). There are four federal false arrest claims brought against Officers Joseph, Cheevers, Miranda, and Cordero (Counts 1-4); five federal malicious prosecution claims brought against Officer Joseph, Cheevers, Miranda, Cordero, and Leonard (twice)[2] (Counts 5-10); five state law false arrest claims one against each Officer (Counts 11-15); and five state law malicious prosecution claims one against each Officer (Counts 16-20).

---

[2] The title of Count 10 states that it is a malicious prosecution claim against Officer Leonard (Compl. 13), but the body of the claim is a malicious prosecution claim against Officer Cordero (*Id.* at ¶¶ 120-127). Because the Complaint already contains a claim for malicious prosecution against Officer Leonard (Count 5) and one against Officer Cordero (Count 9), Count 10 should be dismissed as duplicative. *See Gonzalez v. Lansing*, No. 19-23152, 2020 WL 13227493, at *3 (S.D. Fla. June 4, 2020) (Moore, J.) ("To promote judicial economy, a court should dismiss claims that are duplicative of other claims.") (internal citations omitted).

Although Plaintiff rightly dismissed all counts against Miami-Dade County, the Amended Complaint fails to correct the substantive and pleading deficiencies identified with respect to all counts brought against the Officers. Because the Complaint is riddled with substantive and pleading deficiencies, and because Defendants are entitled to qualified and sovereign immunity Officers Joseph, Cheever, Miranda, and Leonard move to dismiss the Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).[3]

## LEGAL STANDARD

For a complaint to withstand a Rule 12(b)(6) motion, it "must state a claim for relief that is plausible, not merely possible." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). A claim is "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). In considering the motion, a court accepts well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff, *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019), but may reject conclusory allegations or legal conclusions, *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1340 (11th Cir. 2017).

A complaint is also "subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550

---

[3] To the best of undersigned's knowledge, former Officer Darlene Cordero has not been served. Although this Motion is not brought on Officer Cordero's behalf, the arguments made here apply to all the claims brought against Officer Cordero equally.

U.S. 544. Both qualified immunity and sovereign immunity are affirmative defenses, which the Court can resolve at the motion to dismiss stage. *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 110 (2020); *Parker v. Am. Traffic Sol'ns, Inc.*, 835 F.3d 1363, 1368 (11th Cir. 2016).

## ARGUMENT

I. **PLAINTIFF'S FEDERAL CLAIMS AGAINST THE OFFICERS (COUNTS 1-10) MUST BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY**

Qualified immunity protects government officials, like police officers, "from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[T]he 'breathing room' afforded by qualified immunity is generous; . . . 'it protects all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *al-Kidd*, 563 U.S. at 743). To invoke the defense, an officer must first establish that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1143-44 (11th Cir. 2017) (cleaned up). In this case, Plaintiff concedes the Officers were acting within the scope of their discretionary authority as they undertook all the challenged actions while on duty as police officers conducting arrest and investigative functions. *See* Am. Compl. ¶¶ 6-10; 41.

With the defense properly invoked here, the burden shifts to Plaintiff to negate it, *Patel*, 959 F.3d at 1338, for qualified immunity is "an immunity from suit" that is "effectively lost if a case is erroneously permitted to go to trial"—or even into pretrial discovery—before the Court resolves the Officers' entitlement to it. *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (cleaned up); *Howe v. City of Enterprise*, 861 F.3d 1300, 1301-03 (11th Cir. 2017). To meet his

burden, two threshold questions must be resolved in Plaintiff's favor: First, did Plaintiff plead facts showing the Officers violated his constitutional rights? Second, were those rights clearly established at the time of the incident? *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The Court may conduct the qualified immunity inquiry in any order, and a "no" on either prong is fatal to Plaintiff's claims. *See Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019).

### a. The Officers Are Entitled to Qualified Immunity on Plaintiff's False Arrest Claims (Counts 1-4) Because They Had Probable Cause to Arrest Plaintiff

Plaintiff claims that Officers Joseph, Cheevers, Miranda, and Cordero violated his constitutional rights when they falsely arrested him without probable cause. Not so. The Arrest Affidavit unequivocally shows the Officers had probable cause to arrest Plaintiff. Thus, the Officers are entitled to qualified immunity.

"[T]he existence of probable cause at the time of the arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.,* 608 F.3d 724, 734 (11th Cir. 2010). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (internal citations and quotations omitted). Even without probable cause, an officer "is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." *Gates v. Khokar*, 884 F.3d 1290, 1298 (11th Cir. 2018). Arguable probable cause "exists where reasonable officers in the same circumstances and possessing the same knowledge as the [arresting officer] *could* have believed that probable cause existed to arrest." *Id.* (cleaned up). In other words, if Officers Joseph, Cheevers, Miranda, and Cordero could have believed they had probable cause to arrest Plaintiff, they are entitled to qualified immunity, and all false arrest claims against them must fail.

"It is well established that police officers may generally rely on eyewitness accounts and victim statements to establish probable cause." *Bright v. Thomas*, 754 F. App'x 783, 787 (11th Cir. 2018); *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998) ("[A]n officer is entitled to rely on a victim's criminal complaint as support for probable cause."); *Myers v. Bowman*, 713 F.3d 1319, 1323, 1326–27 (11th Cir. 2013) (finding a theft victim's complaint sufficient to establish probable cause); *Jordan v. Mosley*, 487 F.3d 1350, 1353, 1355 (11th Cir. 2007) (eyewitness statements led an objectively reasonable officer to believe the plaintiff committed a crime); *L.S.T., Inc. v. Crow*, 49 F.3d 679, 684–85 (11th Cir. 1995) (finding probable cause based on the "victim's complaint and his identification" with other eyewitnesses statements). *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008) ("Probable cause for an arrest exists when an eyewitness reports witnessing a crime to police.").

Here, Detective Leonard prepared an arrest affidavit based on the Victim's sworn testimony, which was that she had been repeatedly and brutally raped by her son, the Plaintiff. *See* Arrest Form [Ex. 1]. The Arrest Affidavit recounts a detailed and heinous story of repeated sexual violence by Plaintiff against his own mother, reported by the mother herself:

> The victim advised that on an unknown date in November 2017, the subject called her into a bedroom in her single family residence. Once inside the subject pushed her onto the floor, removed her clothing and forced penile vaginal intercourse on her. She advised that she attempted to resist the defendant but she was unable to do so due to his strength. During a struggle, the defendant became upset and slapped her several times. The victim further advised that at the conclusion of the sexual assault, the defendant demanded she perform fellatio on him and she refused. Thereafter, the defendant stood up and kicked her several times. After kicking her, the defendant threatened to kill her if she called the police or told anyone of the sexual battery. The victim stated she was in fear for her life. As a result, she was unable to leave the home for several days.

*Id.* It was based on the Victim's own sworn statement—which was ***corroborated*** by the victim's daughter, as noted on the Arrest Affidavit ("the victim disclosed to her daughter (R. Lazara) that

she was sexually assaulted by the defendant on multiple occasions.")—that the Officers arrested Plaintiff. In light of the Victim's detailed statement regarding the abuse, the Officers had at least arguable probable cause (but also, probable cause) to arrest Plaintiff. *See e.g., Anderson v. City of Groveland*, No. 15-26-30PRL, 2016 WL 881148, at *7 (M.D. Fla. Mar. 8, 2016) (finding officer was entitled to qualified immunity on false arrest claim where the arrest affidavit recounted eyewitness reports from the victims.).

Before Plaintiff's arrest, the Officers interviewed the Victim and her children and obtained the Victim's own statement detailing when and how she had been repeatedly raped by Plaintiff. This formed the basis for their reasonable belief that Plaintiff, had committed, at the very least, a sexual battery. The facts and circumstances within the Officers' knowledge—a victim's own account of her own son raping her repeatedly, which was corroborated by the Victim's daughter—would cause a prudent person to believe that a crime had been committed, sufficing to establish probable cause.

And even if the Officers did not have probable cause to arrest Plaintiff, they certainly had arguable probable cause to do so. An officer in the same circumstance and possessing the same knowledge as the Officers could have believed probable cause existed to arrest Plaintiff because the Victim specifically described—in great detail—how her own child, the Plaintiff, raped and assaulted her. Because the Officers had at least arguable probable cause to arrest Plaintiff, they did not violate Plaintiff's constitutional rights, and they are entitled to qualified immunity on Plaintiff's false arrest claims. Accordingly, Counts 1-4 should be dismissed with prejudice.

### b. The Officers Are Entitled to Qualified Immunity on Plaintiff's Malicious Prosecution Claims (Counts 5-10)

To establish a cognizable malicious prosecution claim under § 1983 "a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth

Amendment right to be free from unreasonable seizures." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). The elements of the common-law tort of malicious prosecution require a plaintiff to "prove that the officers 'instituted or continued' a criminal prosecution against him, "with malice and without probable cause," that terminated in his favor and caused damage to him. *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) (internal citations and quotations omitted). Plaintiff cannot meet this standard for two reasons.

First, the existence of probable cause to arrest Plaintiff for sexual battery is a bar to Plaintiff's claim: "the absence of probable cause is undoubtedly a requirement for a claim of malicious prosecution." *Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020); *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003) ("probable cause bars [plaintiff's] § 1983 malicious prosecution claim."); *Pitts v. Grant*, No. 21-12759, 2022 WL 1117454, at *3 (11th Cir. Apr. 14, 2022) ("Where probable cause exists, a malicious prosecution claim will fail."); *Woods v. Paradis*, 380 F. Supp. 2d 1316, 1330 (S.D. Fla. 2005) (finding plaintiff cannot establish a malicious prosecution claim where the arrest was supported by probable cause). Here—as outlined above—the Officers had probable cause, or at least arguable probable cause, to arrest Plaintiff for sexual battery. As noted on the Arrest Affidavit, Plaintiff's mother specifically told the Officers that Plaintiff had repeatedly raped her, kicked her, and refused to let her leave the house. This suffices to establish probable cause for Plaintiff's arrest. *See Bright*, 754. F. App'x 783 at 787; *Rankin*, 133 F.3d at 1441. Because lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution, the existence of probable cause defeats Plaintiff's malicious prosecution claim.

Second, Plaintiff's claim against the Officers fails because "[t]his Circuit is clear that a police officer's arrest of an individual is insufficient, by itself to support a claim of malicious

prosecution against the officer." *Killmon v. City of Miami*, No. 04-20707, 2006 WL 8433272, at *17 (S.D. Fla. Feb. 1, 2006) (Altonaga, J.), *aff'd*, 199 F. App'x 796 (11th Cir. 2006). To state a plausible claim for malicious prosecution, Plaintiff must allege that the Officers either made the decision to prosecute him or acted "in such a way such as [to] improperly influence the decision by the State Attorney." *Eubanks v. Gerwen,* 40 F.3d 1157, 1161 (11th Cir. 1994) (reversing district court's denial of officers' motion for summary judgment where officers could not be liable for malicious prosecution because they were not involved in the decision to prosecutor, nor improperly influenced the state attorney); *Paradis*, 380 F. Supp. 2d at 1330 ("Because Defendant. . . had nothing to do with the decision to prosecute. . . he is not the proper target for a malicious prosecution claim."). Importantly, "a judicial determination of probable cause" typically "severs the causal chain between a warrantless arrest and pretrial detention." *Williams v. Aguirre*, 965 F.3d 1147, 1167 (11th Cir. 2020).

Here, the Amended Complaint states that Officers Wislyn and Cheevers arrested Plaintiff (Am. Compl. ¶¶ 100; 109), Officers Leonard and Cordero interrogated him (*Id.* at ¶¶ 90; 131), and that Officer Miranda vaguely "assisted in the arrest, apprehension, and detention" of Plaintiff (*Id.* at ¶ 120), but it fails to allege that any of the Officers had any involvement in the decision to prosecute him—a decision, of course, made by the State Attorney's Office. And because a probable cause determination was made by a judge at Plaintiff's first appearance, *See* May 11, 2018 Docket Entry for First Appearance/Bond Hearing [Ex. 2], the required causal chain between the Officers' warrantless arrest and the detention is severed. *See Aguirre*, 965 F.3d at 1167; *Killmon*, 2016 WL 8433272, at *17 ("Absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor, the *chain* of causation against a police officer is broken."). The Complaint simply fails to allege the Officers

here had "anything to do with the decision whether or not to prosecute" him, and so the Officers "are not proper targets" of malicious prosecution claims. *Eubanks*, 40 F.3d at 1160.

Because Plaintiff cannot establish two of the required elements of the common law malicious prosecution claim—the absence of probable cause and that these Officers "instituted or continued" a criminal prosecution against him—Plaintiff cannot establish a constitutional violation for malicious prosecution claim, and the Officers are entitled to qualified immunity.

### II. PROBABLE CAUSE BARS THE STATE LAW CLAIMS FOR FALSE ARREST & MALICIOUS PROSECUTION AGAINST THE OFFICERS (COUNTS 11-20)

"Probable cause bars a claim for false arrest under Florida law just as it does under federal law." *Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021). It likewise bars state law claims for malicious prosecution because the "absence of probable cause for the original proceeding" is an express element of the claim under Florida law. *Williams v. City of Homestead*, *Fla.,* 206 F. App'x 886, 889 (11th Cir. 2006). The "standard for determining the existence of probable cause is the same under both Florida and federal law." *Rankin*, 133 F.3d at 1433. As explained above, probable cause to arrest Plaintiff is evident from the Arrest Affidavit. Therefore, the Court should dismiss Plaintiff's state law claims for false arrest and malicious prosecution against the Officers.

### III. THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT STILL DOES NOT CONTAIN SUFFICIENT FACTUAL ALLEGATIONS TO MEET THE PLEADING STANDARDS & DEFEAT QUALIFIED IMMUNITY

Even if Plaintiff could overcome the substantive deficiencies already identified, his Complaint would still be subject to dismissal because it is riddled with legal conclusions that lack supporting factual allegations in violation of the federal pleading standards. "A plaintiff survives a motion to dismiss only if his complaint alleges sufficient factual matter, accepted as true, that states a claim to relief that is plausible on its face." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (cleaned up). Although Federal Rule of Civil Procedure 8 does not require detailed

factual allegations, "it requires more than unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* In this vein, a Plaintiff must plead more than "labels and conclusions" or formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. This means that legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To determine whether a complaint survives a motion to dismiss, the Court uses a two-step framework. First, the Court identifies conclusory allegations, which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Second, after disregarding conclusory allegations, the Court determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Id.*

Here, each count of the Amended Complaint is replete with conclusory allegations that lack factual support. For example, Count 13 for false arrest states: "Officer Miranda's unlawful detention and derivation [*sic*] of liberty was without arguable or actual probable cause." Am. Compl. ¶ 172. The alleged unlawfulness of Plaintiff's detention and the absence of probable cause are both legal conclusions, which must be disregarded. *Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020) (affirming district court's dismissal of malicious prosecution claim where plaintiff alleged that the officer acted without probable cause but failed to give any facts to support his "conclusory allegations"). And there are no *factual* allegations to support Plaintiff's conclusions. Count 13 does not explain: (i) Officer Miranda's role in arresting Plaintiff; (ii) which of his actions purportedly violated Plaintiff's Fourth Amendment Rights; or (iii) on which *facts* he basis the legal conclusion that Plaintiff's arrest was made without probable cause. Plaintiff's reference and incorporation of paragraphs 1-70, *see* Am. Compl. 17, does not help him either

because the first 70 paragraphs do not contain *any* specific allegations about *Officer Miranda's conduct* or what role he played in the arrest and detention of Plaintiff.[4]

In lieu of any *factual* allegations describing how Officer Miranda participated in the investigation or detention of Plaintiff, Plaintiff offers a laundry list of legal arguments and conclusions couched as factual allegations. For instance, Plaintiff alleges that Officer Miranda "did not have any first-hand knowledge of a crime," "was not acting in good faith," and "knew there was no evidence against Plaintiff." *Id.* at ¶¶ 175, 177, 178. Similarly, Plaintiff claims that "the moment Plaintiff was arrested the facts and circumstances within this officers' knowledge was [*sic*] not sufficient to warrant a prudent police officer to belie [*sic*] that the Plaintiff had committed or was committing an offense." *Id.* at ¶ 174. These are simply variations of the same conclusory proposition: that Officer Miranda lacked probable cause to arrest Plaintiff. But they do not contain any *facts with respect to Officer Miranda's conduct*. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

This same pattern of vague and conclusory allegations is repeated throughout counts 14-20 of the Amended Complaint. *See* Counts 14-20. In each of these counts, the Amended Complaints fails to include factual allegations that permit the Officers (or the Court) to determine "which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

---

[4] Plaintiff also improperly incorporates ¶¶ 49-70 through the Amended Complaint. *See* Am. Compl. 7; 17. These paragraphs form part and parcel of Counts 1 and 2, and thus should not be incorporated into any other count in the Amended Complaint.

This defect is particularly problematic where, as here, the Officers have invoked their entitlement to qualified immunity and each Officer is entitled to "an individualized analysis" of qualified immunity. *Alcocer v. Mills*, 906 F.3d 944, 952 (11th Cir. 2018) (reversing trial court for failing to "individually evaluate each defendant's specific actions and omissions"); *Mathews v. Wetherbee*, 839 F. App'x 395, 397 (11th Cir. 2020) ("the district court erred in not engaging in an individualized qualified immunity analysis for each defendant."). This is an impossible task given Plaintiff's failure to plead individualized facts as to each Officer's conduct. In sum, because the Amended Complaint is comprised of conclusory allegations it does not comport with federal pleading standards and should be dismissed.

## CONCLUSION

Because the Officers are entitled to qualified immunity on Counts 1-10 and probable cause bars Counts 11-20, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

Dated: September 18, 2023

                                                  Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: *s/ Fabiana Cohen*
Fabiana Cohen
Assistant County Attorney
e-mail: cohenf@miamidade.gov
Phone: (305) 375-5151
Florida Bar No. 119732